IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAI INTERNATIONAL, INC., | No. C 11-2403 CW |
| Plaintiff, | ORDER GRANTING MOTION TO SET |
| v. | ASIDE DEFAULT (Docket No. 29) |
| SOUTH ATLANTIC CONTAINER LINES, LTD.; MARUBA S.C.A. EMPRESA DE NAVEGACIO MARITIMA; and EMPRESA DE NAVEGACION MARUBA S.A., | AND DENYING MOTIONS TO DISMISS (Docket Nos. 27 and 30) |
| Defendants. | |

_____/

Defendant South Atlantic Container Lines, Ltd. (SACL) moves to set aside the default entered against it.  Plaintiff CAI International, Inc. has filed a statement of non-opposition to SACL's motion.  SACL and Defendant Empresa de Navegacion Maruba S.A. (Maruba SA) also move to dismiss CAI's complaint for improper venue pursuant to Federal of Civil Procedure 12(b)(3).[1]  CAI opposes their motions.  Having considered the papers filed by the parties and their arguments at the hearing, the Court GRANTS SACL's unopposed motion to set aside the default and DENIES the motions to dismiss.

BACKGROUND

Except where noted, the facts material to the resolution of these motions are not in dispute.

_____

[1] Defendant Maruba S.C.A. Empresa De Navegacion Maritima, now known as Maritima Maruba, S.A. (Maritima Maruba), did not participate in either motion to dismiss.

CAI and SACL entered into three agreements whereby CAI leased shipping containers to SACL.

The first two lease agreements, dated May 1, 2005 and November 1, 2008, amended December 15, 2008, contain identical venue selection clauses.  These clauses state in relevant part,

> With respect to any claim or controversy arising out of or relating to this agreement, the parties consent to the jurisdiction of State and Federal Courts located in San Francisco, California, U.S.A.

Declaration of Nadine Teixeira in Supp. of Pl.'s Opp. to Def. Maruba SA's Mot. to Dismiss (Teixeira Maruba SA Decl.) ¶ 4, Ex. E at 10, General Terms and Conditions ¶ 11(a); id. at ¶ 4, Ex. F at 10, General Terms and Conditions ¶ 11(a).

The third lease agreement, dated August 8, 2009, states,

> With respect to any claim or controversy arising out of or relating to this agreement, Lessor may require that any dispute or proceeding arising out of or relating to this Agreement, shall, at Lessor's sole option and discretion, be brought only in state or federal courts having jurisdiction over the City and County of San Francisco or before the American Arbitration Association in San Francisco under its Commercial Arbitration Rules. Lessee consents to jurisdiction and venue in those courts.  Lessor may opt to commence or allow proceedings in any other jurisdiction.

Teixeira Maruba SA Decl. ¶ 4, Ex. G at 8, General Terms and Conditions ¶ 11(a).

On August 10, 2009, CAI entered into an amended and restated guaranty agreement with Maruba SA and Maritima Maruba, in which Maruba SA and Maritima Maruba guaranteed SACL's performance and payment under the lease agreements.  Id. ¶ 5, Ex. A at 1.  The guaranty agreement contained a forum selection clause stating,

> CAI may require that any dispute or proceeding arising out of or relating to this Guaranty shall, at CAI's sole option and discretion, be brought only in state or federal courts having jurisdiction over the City and

County of San Francisco or before the American
Arbitration Association in San Francisco under its
Commercial Arbitration Rules.  Each of the Guarantors
consents to jurisdiction and venue in those courts.  CAI
may opt to commence or allow proceedings in any other
jurisdiction.

Id. at 6 ¶ 12.

On September 30, 2010, CAI entered into a Creditors Agreement
with multiple parties, including Maruba SA and SACL, but not
Maritima Maruba.  Id. ¶ 6, Ex. B.  The purpose of this agreement
was to restructure debt that various debtors, including Maruba SA
and others, owed to creditors, including CAI and others, to allow
the debtors to resolve assorted debts, including that owed under
the guaranty and lease agreements described above, with the
assistance of a new investor.  Id. at 3-4.  The Creditors
Agreement incorporated the lease agreements between CAI and SACL
by reference in the schedule of "Charter Party Agreements /
Leasing Contracts."  Id. at 16.  The Creditors Agreement provided
that, after certain payments of the outstanding debt amounts were
made, forty percent of the total overdue debt would be waived.
Id. at 7.  The Creditors Agreement also provided that the Company[2]
would pay, effective June 30, 2010, the original lease amounts in
the leasing contracts.  Id. at 7 ¶ 2.6.  The creditors agreed,
"for the duration of the Creditors Agreement, not to take any
legal actions against the Company (including but not limited to a
demand for payment, filing for insolvency, enforcement action or
any other similar proceedings)."  Id. at 7 ¶ 4.

---

[2] The "Company" was defined to include Maruba SA, SACL and
four other companies.  Teixeira Maruba SA Decl. ¶ 6, Ex. B, at 3.

The Creditors Agreement included clauses addressing events of default that allowed CAI and the other creditors to cancel the agreement.  If the Company failed to make the payments of outstanding debt required to any creditor within specified amounts of time, the default "shall be deemed to be a repudiatory breach of the Creditors Agreement insofar as it relates to that Creditor."  <u>Id.</u> at 8-9 ¶¶ 7.1-7.3.  In such an event, the creditor "shall be entitled to cancel the Creditors Agreement insofar as it relates to that Creditor" and to start proceedings to recover the total overdue amount, including any amount that would have been waived had the Creditors Agreement remained in effect.  <u>Id.</u> Further, if ongoing lease payments were not made within a certain time period, the affected creditor could also cancel the Creditors Agreement.  <u>Id.</u> at 9 ¶ 7.4.1.  In addition, "the Creditors reserve all of their rights to commence any action or proceeding against the relevant counterparty under the relevant Container Lease Agreements / Leasing Contracts and/or Charter Party Agreements to which they are party.  This right shall be in addition to and shall not replace or amend any existing rights, terms or conditions contained in the Container Lease Agreements / Leasing Contracts and/or Charter Party Agreements."  <u>Id.</u> at 9-10 ¶ 7.4.2.

The Creditors Agreement also included clauses establishing a condition precedent:

> 9.1 The restructuring shall be subject to the Condition Precedent that the Company provides evidence of the undertaking from the New Investor, in which the New Investor guarantees:
>
> (a) the New Investor's investment and capital injection into the Company;

(b)   that a minimum of USD 30,000,000 (United States Dollars Thirty Million only) of the New Investor's investment and capital injection will be invested in the bulker business of the Company; and

(c)   that the New Investor unconditionally and irrevocably agrees and acknowledges that its investment and capital injection into the Company shall always be subordinated to the Total Overdue Amount, less the amount already paid by the Company to the Creditors pursuant to this Creditors Agreement.

. . .

9.3   The Creditors Agreement will be effective as from the Effective Date, which shall be evidenced by confirmation in writing by Roland Berger Strategy Consultants addressed to all Parties.

9.4   Notwithstanding any provision in this Creditors Agreement to the contrary, the Creditors Agreement shall not become effective unless and until the Conditions Precedent set out in clause 9.1 has been satisfied.

Id. at 10 ¶¶ 9.1, 9.3, 9.4.

Like the earlier agreement, the Creditors Agreement included a venue selection clause:

The parties irrevocably agree that the Courts of England and Wales shall have exclusive jurisdiction to determine any dispute or claim (including non-contractual disputes or claims) arising under or in connection with the Creditors Agreement.

Id. at 13 ¶ 19.2.

The Creditors Agreement also stated,

In the event of any conflict between this Agreement and (i) any amendment to the Charter Party and / or Leasing Contracts, according to which the terms of this Agreement are implemented, or (ii) any other agreement, which is concluded for the purpose of the implementation of the terms of this Agreement, the terms of this Agreement shall prevail.

Id. at 13 ¶ 18.2.

Also on September 30, 2010, CAI entered into a Letter Agreement with multiple parties, again including Maruba SA and SACL but not Maritima Maruba.  Id. at ¶ 7, Ex. C.  The Letter Agreement was drafted by counsel for Maruba SA and SACL.  Id. at ¶ 7.  In consideration for CAI entering into the Creditors Agreement, Maruba SA agreed to pay the overdue amount that CAI agreed to waive in the Creditors Agreement and to return the containers to CAI.  Id. at ¶ 7, Ex. C at 1-2.  The Letter Agreement provided,

> In the event that Maruba fails to make payment to CAI on the terms set forth above, the Creditors Agreement may be immediately cancelled by CAI and the respective full current Outstanding Debt shall fall automatically due and payable to CAI without further notice.

2 ¶ 3.  It also contained a forum selection clause:

> CAI may require that any dispute or proceeding arising out of or relating to this Letter Agreement shall, at CAI's sole option and discretion be brought only in state or federal courts having jurisdiction over the City and County of San Francisco or before the American Arbitration Association in San Francisco under its Commercial Arbitration Rules.  Each of the Maruba Companies consents to jurisdiction and venue in those courts.  CAI may opt to commence or allow proceedings in any other jurisdiction.

3 ¶ 9.

The parties dispute whether the conditions precedent to the Creditors Agreement were ever met, and thus whether that agreement became effective.  With their replies, SACL and Maruba SA submitted a letter dated October 18, 2010 and purportedly written by Nils R. Kuhlwein von Rathenow of Roland Berger Strategy Consultants.  Swenson Maruba SA Reply Decl. ¶ 2, Ex. 1.  The letter is addressed to "all creditors of Maruba S.A." and bears the subject line "Conditions for effectiveness of the creditor

agreement MARUBA." Id. It states that the new investor had
signed a confirmation letter fulfilling the conditions precedent
set forth in clause 9.1 of the Creditors Agreement and that
"Roland Berger Strategy Consultants (RBSC) hereby confirms, that
the conditions for the effectiveness of the creditors agreement
. . . are fulfilled." Id. CAI never received this letter, or any
other evidence of the undertaking from the new investor as
required by paragraph 9.1 of the Creditors Agreement, and disputes
its authenticity. Teixeira Maruba SA Decl. ¶ 8; Declaration of
Nadine Teixeira in Supp. of Pl.'s Opp. to Def. SACL's Mot. to
Dismiss (Teixeira SACL Decl.) ¶ 6-8. Marcelo Sibione, the
operational director of Maruba SA, attests that he received a copy
of this letter by email from von Rathenow on October 20, 2012, but
does not provide a copy of the email to which the letter was
attached, or attest that the other parties to the Creditors
Agreement were included on the email. Sibione Decl. ¶ 6.[3]

The debtors, including SACL, made only a small initial
payment in late 2010, of less than the amount that would have been
required under the Creditors Agreement and not on the deadline set

_____

[3] Because the Court concludes that, even if the Creditors
Agreement came into effect, CAI validly cancelled it, and that its
venue selection clause does not apply, the Court need not resolve
the admissibility of the Roland Berger letter or whether the
conditions precedent were met. The Court notes, however, that
that Sibione, as a representative of Maruba SA and not the
creditors of Maruba SA, was not among the parties to whom the
letter was purportedly addressed. Further, the letter was not
addressed to "all Parties" to the Creditors Agreement, as required
by paragraph 9.4 of the Creditors Agreement. Finally, even if the
letter were properly authenticated, it would amount to
inadmissible hearsay to the extent that Maruba SA and SACL seek to
use it to establish that Defendants provided proof of the new
investor's undertaking as required by paragraph 9.1 of the
Creditors Agreement.

forth in the Creditors Agreement.  Teixeira SACL Decl. ¶ 10.
Maruba SA also never made payment to CAI according to the payment
schedule set forth in the Letter Agreement and never returned any
containers to CAI pursuant to the Letter Agreement.  Id.

On December 21, 2010, the parties to the Creditors Agreement
executed an addendum to that agreement.  Teixiera Maruba SA Decl.
¶ 6, Ex. B, 22-27.  The addendum stated that, in the original
Creditors Agreement, the Company agreed that it would "within 30
days after the Effective Date pay to the Creditors the Payable
Overdue Amount in full," but that for "several reasons it was not
possible for the Company to comply with their obligations under
the Creditors Agreement and to pay to the Creditors the Payable
Overdue Amount accordingly."  Id. at 1-2.  In the addendum, the
parties agreed to change the due dates for certain payments of the
overdue debt, but that "all other terms and conditions of the
Creditors Agreement shall remain in full force and effect and be
unaffected hereby."  Id. at 1.1-2.

On March 14, 2011, CAI sent Defendants a letter titled,
"Termination for Default of all Lease Agreements between CAI
International, Inc, as Lessor ('CAI'), and South Atlantic
Container Lines Ltd. ('Lessee')."  Teixiera Maruba SA Decl. ¶ 10,
Ex. D.  In the letter, CAI stated that it "formally declares with
immediate effect the default" of the three lease agreements
between itself and SACL.  Id.

On May 17, 2011, CAI initiated this action.  Docket No. 1.
In the complaint, CAI alleges that Defendants breached the lease
and guaranty agreements, and seeks compensation from Defendants
for outstanding leasing charges, the replacement value of

containers that were not returned, the cost of repairs to containers that were returned and liquidated damages.  CAI does not refer to the Creditors Agreement or Letter Agreement in the complaint.

On November 18, 2011, upon CAI's motion, the clerk entered default as to SACL.  Docket No. 13.

On May 14, 2012, after Maruba SA filed its reply in support of its motion to dismiss, CAI sent Defendants a letter stating that it cancelled the Creditors Agreement because they had not made the required payments or returned the leased containers. Teixeira SACL Decl. ¶ 12, Ex. F.  In the letter, CAI reserved its arguments that the Creditors Agreement had not come into effect or was already cancelled.  Id.

LEGAL STANDARD

A defendant may raise a Rule 12(b)(3) motion to dismiss for improper venue in its first responsive pleading or by a separate pre-answer motion.  See Federal Rule of Civil Procedure 12(h)(1). Once the defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper.  Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).

When considering a Rule 12(b)(3) motion to dismiss, "the pleadings need not be accepted as true, . . . and the court may consider facts outside of the pleadings."  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (internal quotations and citations omitted).  If there are material factual issues in genuine dispute, it is "within the sound discretion of the district court" to elect to hold an evidentiary hearing on the disputed facts, in order to weigh evidence, assess credibility and

United States District Court
For the Northern District of California

make factual findings necessary to resolve the motion.  Id. at 1139-40.  Alternatively, the court may deny the motion "while granting leave to refile it if further development of the record eliminates any genuine factual issue."  Id. at 1139.  If the court does not hold an evidentiary hearing, it "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Id. at 1138-40.

## DISCUSSION

SACL and Maruba SA move to dismiss this action.  They argue that, although CAI's complaint did not mention the Creditors Agreement, its claims necessarily implicate that agreement, which restructured the debt between the parties.  They contend that the action is thus subject to the forum selection clause in the Creditors Agreement, which specifies England and Wales as the forum.

The Court does not reach the parties' arguments regarding whether the conditions precedent for the Creditors Agreement were met and thus whether it was ever effective, because the Court concludes that CAI's undisputed valid termination of the agreement precludes the application of forum selection clause to the instant dispute.[4]

SACL and Maruba SA argue that their breach of the substantive obligations of the Creditors Agreement should not excuse the

_____

[4] While Maruba SA suggested in a footnote in its reply brief that the March 14, 2011 letter was not an effective cancellation of the Creditors Agreement, neither Defendant contested in its papers or at the hearing that the May 14, 2012 letter was an effective cancellation.

United States District Court
For the Northern District of California

requirement that CAI comply with the forum selection clause. However, SACL and Maruba SA do not acknowledge that a termination or cancellation of a contract may have a different effect than the breach of a contract.  "A breach by a party to a contract does not in itself cancel the contract."  <u>Comedy Club, Inc. v. Improv W. Associates</u>, 553 F.3d 1277, 1289 (9th Cir. 2009).[5]  "Cancellation of a contract occurs when either party puts an end to the contract for breach by the other."  <u>Id.</u> (internal quotations omitted).  "Termination occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach."  <u>Id.</u> at 1289 n.13.

Here, CAI's valid cancellation of the Creditors Agreement, pursuant to the power granted to it in that contract, put an end to the obligations of either party to continue performing thereunder in the future.  As a result, the relationship between the parties, set up by the lease and guaranty agreements, was no longer subject to the restructuring of debt created by the Creditors Agreement.  Thus, CAI's claims do not arise "under or in connection with the Creditors Agreement," as SACL and Maruba SA argue, and are not subject to the forum selection clause therein.

---

[5] In their replies, Maruba SA and SACL raise for the first time an argument that the Creditors Agreement contains a choice of law provision stating, "The Creditors Agreement and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed with [sic] in accordance with the laws of England and Wales."  Teixeira SACL Decl., Ex. D, 13 ¶ 19.1.  However, they do not cite any authority from England and Wales or suggest any way in which such law would materially differ from federal or California law regarding the enforcement of forum selection clauses or any other issue relevant to the resolution of this motion.

The parties do not dispute that CAI has the right to commence an action to enforce the obligations under the lease and guaranty agreements.  Indeed, the Creditors Agreement specifically reserved to CAI the right to commence any action or proceeding against Defendants under the relevant lease agreements, and noted that CAI's existing rights in the lease agreements were not replaced or amended.  Texiera Maruba SA Decl., Ex. B, at 9-10 ¶ 7.4.2.

Because CAI is seeking to enforce its rights in the original agreements, and is not suing for damages for Defendants' failure to perform their obligations under the Creditors Agreement itself, this case is distinguishable from those in which the plaintiff is suing based on the terminated or cancelled agreement.  When a contract is terminated or cancelled, parties retain the right to sue at least on past breaches.  See, e.g., 1 Witkin Sum. Cal. Law Contracts § 925.  In those situations, where the plaintiff's claims are based on a breach of the terminated or cancelled contract, a forum selection clause in that contract may survive the termination or cancellation.  See, e.g., Modern Am. Recycling Servs. v. Dunavant, 2011 U.S. Dist. LEXIS 39768, at *9 (E.D. La.) (applying forum selection clause where the claims arose out of a terminated contract); TriState HVAC Equip., LLP v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 535-37 (E.D. Pa. 2010) (same).  For this reason as well, SACL and Maruba SA's argument that the forum selection clause would be rendered meaningless if it were not applied to this case is incorrect; the clause might be applicable to an action brought by CAI for Defendants' past breach of the Creditors Agreement itself.

12

United States District Court
For the Northern District of California

SACL also argues that, even if the forum selection clause in the Creditors Agreement is not applied, this action should be dismissed or transferred because the assigned judge is currently located in the Oakland Division of the Northern District of California and the first two lease agreements provide that "the parties consent to the jurisdiction of State and Federal Courts located in San Francisco, California, U.S.A."  Teixeira Maruba SA Decl. ¶ 4, Ex. E at ¶ 11(a), Ex. F at ¶ 11(a).[6]

The forum selection clauses in the first two lease agreements are not mandatory, and are instead permissive.  California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.").  See also Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1987) (concluding that a forum selection clause that stated that a particular court "shall have jurisdiction over the parties in any action" was permissive and not mandatory).  Here, the relevant clauses do not state that the action may be litigated only San Francisco.  Accordingly, the clauses do not

---

[6] SACL acknowledges that CAI did everything within its power to have the case assigned to a judge located the San Francisco courthouse.  CAI filed this action in San Francisco, requested in the complaint that the case "be assigned to the San Francisco Division," and checked the only box on the Court's civil cover sheet that would allow such an assignment.  See Compl. ¶ 2; Docket 1-1 (checking the box for "San Francisco/Oakland").

For its own administrative purposes, the Court has decided that all actions that "arise in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division," and does not permit the parties themselves to choose between those two divisions. Civil Local Rule 3-2(d).  See also General Order No. 44.

13

provide an exclusive venue of San Francisco and the Court need not reach whether venue would nevertheless be appropriate if the clauses did create exclusive jurisdiction in San Francisco.

CONCLUSION

For the reasons set forth above, the Court GRANTS SACL's motion to set aside default (Docket No. 29) and denies Maruba SA and SACL's motions to dismiss for improper venue (Docket Nos. 27 and 30).

IT IS SO ORDERED.

Dated: July 5, 2012

CLAUDIA WILKEN
United States District Judge